### SPAUNHORST v. EQUITABLE LIFE ASSUR. SOC. OF U. S.
### No. 9346.

District Court, W. D. Missouri, W. D.
March 26, 1936.

Cope & Hadsell and Walter Raymond, all of Kansas City, Mo., for plaintiff.

Michaels, Blackmar, Newkirk, Eager & Swanson and Kenneth E. Midgley, all of Kansas City, Mo., for defendant.

OTIS, District Judge.

It is attempted by the plaintiff in her first amended petition to state a cause of action under a provision in a life insurance policy providing for double indemnity in the event the insured should die from accidental causes. The facts stated are that the insured "was accidentally stabbed by a convict in the Oklahoma State Penitentiary at McAlester, while the said Louis C. T. Spaunhorst was engaged upon his duties at said penitentiary; that as a direct and sole result of said accidental stabbing, a low grade infection developed below the diaphragm and in and about the region of said stab wound; that the said Louis C. T. Spaunhorst recovered from said stab wound and returned to work; that thereafter and within approximately four to six weeks prior to his death on January 3, 1934, the low grade infection suddenly became virulent, causing an abscess in the abdomen below the diaphragm and in and about the region of said stab wound, causing numerous adhesions in said region, thereby producing a suppurative pericarditis, as a direct and sole result of which the said Louis C. T. Spaunhorst died on the date aforesaid."

The double indemnity provision of the insurance policy with which we are here concerned is as follows:

"Upon receipt of due proof of the insured's death from accident as defined below, occurring while this policy was in force and no premium hereunder in default, the society agrees to increase the face amount to the amount stated on the first page hereof.

"Death from accident means death resulting solely from bodily injuries caused directly, exclusively and independently * * * by external, violent and purely accidental means and ensuing within 90 days of such injuries, but does not include death resulting from or caused directly or indirectly by * * * disease or illness of any kind. * * *"

The accident which plaintiff claims caused the death of the insured was sustained by him on September 27, 1933. He died January 3, 1934. His death occurred

long after the expiration of ninety days from the date of the accident referred to.

The question presented by the demurrer is: When did the ninety-day period referred to in the contract begin to run under the facts pleaded in the petition?

Undoubtedly the parties considered that the language used in the contract enabled them to fix a definite point in time from which a period of ninety days could be measured. The language used then must be interpreted, if that is possible, so as to accomplish that result.

In one sense the word "injury" indicates a hurt. (Injury—Damage or hurt done to or suffered by a person.—Webster's New International Dictionary.) When the word is used in that sense, it does not include in its meaning the infliction of the hurt. In another sense the' word "injury" does indicate the infliction of a hurt as distinguished from the hurt inflicted. (Injury—An act which damages, harms or hurts.—Webster's New International Dictionary.)

If in this contract the word is used in the first of these two senses, what is meant by reference to an event occurring "within ninety days of" (that is from) the injury? There are three possible answers. Either the ninety days are to be measured from: (a) the infliction of the injury, or (b) the termination of the injury, or (c) some point in time between (a) and (b).

Assuming now that the word is used in this sense in the contract here, which of the three possible points in time, (a), (b), or (c), was intended?

Certainly point (c) was not intended. Whatever reasoning would support a contention for point (c) would support a contention for point (b). ·

But point (b) could not have been intended. If the injury terminated in death, if point (b) and death are identical in time, the provision that the death (for which recovery under the policy is allowed) must ensue within ninety days of (from) the injury is robbed of all meaning. Death never would be separated from the injury by any intervening time.

By this process of elimination, we arrive at the conclusion that the parties intended as the point in time from which to measure 90 days, point (a)—the time of infliction of the injury.

If the word "injury" in the contract is used in the second of the two senses set out above, then, of course, the ninety days begins to run with the infliction of the injury.

What was the injury in this case? Was it (1) the knife wound which the insured received? Was it (2) the "low grade infection" which "developed" as a "direct and sole result" of that wound? Was it (3) the suddenly becoming virulent of that infection "four to six weeks prior" to the death of the insured? If it was (1) or (2), the ninety-day period had run before death ensued.

Of the three suggested injuries (if they are to be considered as separate and distinct with different times of beginning) only (1), the knife wound, "was caused directly, exclusively and independently of all other causes" by the alleged accident. Hence only that injury (and the time of its beginning) can be considered. If the three are not separate and distinct but one injury (with three stages of development), then the ninety days begins with the infliction of the wound, the inception of the one injury.

In support of the conclusion reached in this memorandum the case of Kerns v. Ætna Life Insurance Co. (C.C.A.8) 291 F. 289, is cited. That case is in point, although it does not fully discuss the particular subject of this memorandum.

The demurrer should be sustained. It is so ordered. Plaintiff is allowed an exception.